J-S01002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.R.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R.S., FATHER | : | |
| | :: | No. 1024 MDA 2017 |

Appeal from the Order Entered May 26, 2017
in the Court of Common Pleas of Columbia County,
Juvenile Division at No(s):  2016-OC-228

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MARCH 21, 2018**

S.R.S. ("Father") appeals from the Order involuntarily terminating his parental rights to his son, A.R.H. ("Child") (born in September 2012), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511 (a)(1) and (b).  We affirm.

On December 23, 2016, A.C.R. ("Mother") filed a Petition for the involuntary termination of Father's parental rights to Child, so that her husband, S., may adopt Child.  On March 23, 2017, the trial court held a hearing on the Petition.

At the termination hearing, Mother testified on her own behalf, and Father testified on his own behalf.  Father also presented the testimony of his mother, S.S. ("Paternal Grandmother").[1]  Based on the testimonial and

_____

[1] The trial court incorporated the record of Paternal Grandmother's custody intervention hearing, which the court heard just prior to the termination hearing, into the termination hearing record.  Trial Court Opinion, 5/26/17, at 2 n.1.

documentary evidence from the hearing and the record in this matter, the trial

court set forth the factual background and procedural history of this appeal as

follows:

1. Petitioner is [Mother], age 24 when the [P]etition was filed. She resides in Catawissa, Columbia County, Pennsylvania. She is a stay[-]at[-]home mother and has a history of working as a server in restaurants. She is the natural mother of [Child], born [in September 2012]. She is married as of June 2016. She and [S.] and the minor child now live in half of a double house in a residential area of Catawissa, Pennsylvania. [S.'s] mother lives in the other side. [S.] has a good job as a welder. [S.] intends to adopt [Child].

2. Respondent [Father] is the natural father of [Child]. He is 27 years old (when the [P]etition was filed) and resides in Madison[,] Wisconsin. He is unmarried but has had a girlfriend. He has a good job as a carpenter. He was raised in the Hamburg, Berks County, Pennsylvania, area, where his mother lived until a few years ago.

3. [Child] was born [in September 2012]. He has not yet started school. Since his birth, Mother has attended to all his needs and has essentially been the sole nurturing parent. However, during the last year and a half, [S.] has helped in his role as stepfather and father figure.

4. [P]aternal Grandmother is [S.S.] She lived in Hamburg until April 2014 (about 1-1/2 hours from Mother's residence). She then moved to a location that was about [*sic*] was hours from Mother's residence. Then[,] in April 2015, she moved to her present residence in Bucks County, about 2 hours from Catawissa. In a related custody action between Mother and Father[,] [P]aternal Grandmother petitioned to intervene. Her [P]etition was denied on March 23, 2017, based on the law and the facts largely recounted in this Findings of Fact.

5. Mother and Father were never married and were not living together when [Child] was born. Father was present for the birth.

6. Sometime shortly after [Child] was born, Father went to California to work on a master's degree. He returned sometime

- 2 -

around March 2013 when a custody [O]rder was entered in Northumberland County, Pennsylvania. Mother was living in that county at that time. The custody [O]rder provided for joint legal custody and directed that Mother have primary physical custody[,] with Father having essentially every other weekend from Friday at noon until Monday at noon.

7. The every other week custody arrangement continued until Father moved to Wisconsin in April 2014. Sometime prior to that, Father had developed an addiction to heroin. In early 2014, he went into rehab. Custody continued [at] [P]aternal Grandmother's residence[,] where Father had been living. Mother was not aware of Father's stint in rehab until later. Father moved to Wisconsin to change people, places, and things, in accordance with his recovery plan.

8. Mother advised [P]aternal Grandmother to supervise any visits Father had with [Child]. Mother was concerned about Father's addiction. [P]aternal Grandmother agreed.

9. After Father moved to Wisconsin, Mother permitted [P]aternal Grandmother to see [Child] at the times set aside for Father, every other weekend. From April 2014, through May 2015, Father returned to Pennsylvania about six times and spent time with [Child].

10. In May 2015, Father was visiting [P]aternal Grandmother in Pennsylvania. [Child] was there that weekend. [P]aternal Grandmother ran an errand and left Father alone with [Child]. Father injected himself with heroin and passed out (OD'd) [overdosed] in the presence of [Child]. [P]aternal Grandmother returned home, revived him, called an ambulance, and called Mother to pick up [Child]. [P]aternal Grandmother thought Father was clean from heroin and left her guard down.

11. As a result of the May 2015 incident, Father was arrested for Endangering the Welfare of Children. He was placed on probation for three years until about October 2018. He calls in from Wisconsin to his probation officer.

12. Father says he has been in recovery for almost two years at this point, since May 2015. He has attended rehab twice, once being individual outpatient right after the May 2015 incident. He is considering moving back to Pennsylvania to exercise custody

rights, although he is unsure[,] since moving back to old people, places, and things may negatively affect his recovery.

13. Both parents are decent people. Father's persona has been predictably affected by his addiction, although he is trying hard to continue his recovery.

14. Until the May 2015 OD incident, Mother was extraordinarily encouraging of Father's relationship with [Child], albeit with the help of and through [P]aternal Grandmother. Mother became understandably more cautious after the OD incident.

15. By his own choice, Father's contact with [Child] has been minimal over the four and one-half years of [Child's] life. From birth (9-[ ]-12) until March 2013, he was in California with no contact. For the next year, he had every other weekend custody at [P]aternal Grandmother's house. In April 2014, he moved to Wisconsin and visited [Child] about 6 weekends through May 2015 when he OD'[d] in front of [Child]. From May 2015 through today, he has only seen [Child] once, at Christmas[-]time 2015. The only other time he asked to see [Child] was at Christmas[-]time 2016[,] through his lawyer, after this litigation had begun.

16. Father filed a Complaint for Custody on July 12, 2016. [P]aternal Grandmother filed a Petition to Intervene in the custody action at the same time by the same lawyer.[fn]

17. Father was initially paying a support [O]rder through Lycoming County. He advised Mother that he was having financial difficulties. Although she was working hard to make ends meet, she kindly dropped the support action. Voluntarily, Father paid child support [for] twenty-two months[,] until January 2016[,] when he stopped. He has paid nothing else. Except for *de minimus* contributions, the financial support of [Child] has been solely borne by Mother and now her husband.

18. Since at least May 2015, Father has not performed any parental duties, except the limited support payments for a few months. From May 2015 through July 2016, Father only saw [Child] once (December 2015). He was not denied visitation during that time at all, except Christmas[-]time 2016 after this litigation began.

19. From May 2015 through December 2015[,] [P]aternal Grandmother was granted visitation/custody on many of the scheduled weekends. In December 2015, [P]aternal Grandmother's contact with [Child] ended. [P]aternal Grandmother continued to contact Mother for visitation. For some reason, the contact was then denied. Father was not involved in requests for visitation pursuant to the custody schedule during this time.

20. Father always knew how to contact Mother or her parents.

21. Stepfather has become the father figure to [Child], which is clear and predictable since Father has largely absented himself from [Child's] life through his own choices. Stepfather intends to adopt [Child] to formalize his status as nurturing parent.

22. Father knew Mother's address, and how to contact her or her parents. He could have pursued custody through the courts. He chose not to do so.

23. Father seems sincere in having a relationship with [Child]. However, he has no insight into the effect his absence and actions have had on [Child]. He does not acknowledge how Mother has performed parental duties for [Child,] and has given him a stable life and the great possibility of a happy[,] productive, well-adjusted future.

24. [Child's] developmental, physical and emotional needs, and his welfare have been addressed quite well by Mother.

25. Father's sad devolution into addiction has caused his absence from [Child].

26. The witnesses, particularly Mother, were credible.
_____

[fn] The court had set a hearing on the Petition to Intervene promptly. However, Father and [P]aternal Grandmother's counsel requested a continuance[,] which was granted. It was [the trial] court's understanding that counsel would advise the court of readiness to proceed. Thus, the hearing was held months late after [a] request by new counsel.

Trial Court Opinion, 5/26/17, at 2-6 (footnote in original).

Following the hearing, on May 26, 2017, the trial court entered an Order terminating Father's parental rights pursuant to section 2511(a)(1) and (b) of the Adoption Act. On June 26, 2017, Father timely filed a Notice of Appeal, along with a Concise Statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following questions for our review:

1. Whether the [trial] court erred and/or abused its discretions [*sic*] concluding that Mother met her burden of proving by clear and convincing evidence ground[s] for involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511 (a)(1)-(2) when such determination is not supported by the record[?]

2. Whether the [trial] court erred and/or abused its discretion by failing to consider the totality of the circumstances, including Mother's obstructive behavior, which was designed to impede Father's relationship with [C]hild[,] as required under ***In re B., N.M.,*** 856 A.2d 847, 855-[5]6 (Pa. Super. 2004)[?]

3. Whether the termination hearing was structurally flawed[,] pursuant to the requirements of 23 Pa.C.S.[A.] § 2313(a)[,] because the lower court failed to appoint counsel to represent [C]hild's legal interests in accordance with ***In re L.B.M.***, [161 A.3d 172] (Pa. 2017)[2] …, despite acknowledging its responsibly to do so, and this error was not and could not be remedied by appointing counsel after the hearing to review the transcripts and briefs[?]

Father's Brief at 2-3 (some capitalization omitted, footnote added).

---

[2] On March 28, 2017, our Supreme Court initially filed its decision in ***In re L.B.M.***, 156 A.3d 1159 (Pa. 2017), and, thereafter, re-filed it at 161 A.3d 172 (Pa. 2017), also bearing March 28, 2017, as the issuance date. The corrected Opinion clarified that part II-B of the Opinion was not precedential.

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re T.C.*, 984 A.2d 549, 551 (Pa. Super. 2009) (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm[,] even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, Father's parental rights were terminated based upon sections 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative

- 8 -

performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (quotation marks and citations omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted); *see also In re B., N.M.*, 856 A.2d at 854-55.

In his first claim, Father contends that the trial court erred in granting the Petition to involuntarily terminate his parental rights to Child, because Mother did not satisfy, by clear and convincing evidence, that his parental rights should be terminated under section 2511(a)(1). Father's Brief at 11. Father claims that he did not evidence a settled purpose to relinquish his parental rights because he initiated an action asserting his parental rights following the filing of Mother's Petition. *Id.* at 13-14. Father also argues that while he was living in Wisconsin, he visited Child seven times between April 2014 and December 2015. *Id.* at 14; *see also id.* at 15 (noting that Father requested visitation with Child at Christmas-time in 2016, prior to the filing of Mother's Petition). Father further asserts that he ceased support payments

as a tactic to have Mother reach out to him. *Id.* at 15. Father additionally claims that he has overcome his addiction issues. *Id.* at 16.

In its Opinion, the trial court stated the following regarding section 2511(a)(1):

> Based on the facts, it cannot be any clearer that [Father's] conduct evidenced a settled purpose of relinquishing parental claim to [Child] and that he refused and, particularly, failed to perform parental duties for at least six months, more specifically for at least a year and a half prior to the filing of the petition from May 2015. From April 2014 until he OD'd in front of [Child] in May 2015, he had only seen [Child] six times. From May 2015 through today, Father visited with [Child] one time (Christmas 2015). During that time, there were no gifts, cards (except possibly rarely), or letters. During that time, Father paid no child support nor provided any economic benefit to [Child]. During that time, there was absolutely no performance of parental duties. In fact, Father performed no parental duties from May 2015 through the time of the filing of the petition. From April 2014 through December 2016, Father had seen [Child] seven times (at most 14-21 days) out of almost 1000 days. The custody action filed by Father in the summer of 2016 was really a pretext to allow [P]aternal Grandmother to file a [P]etition to [I]ntervene.
>
> [] Father suggests that he was in recovery from his addiction, therefore waiting to get healthy before attending to his parental responsibilities. Father deserves credit for his effort to achieve lasting recovery. However, [Child] continues to grow and mature. His development into adulthood cannot wait for Father. [Child] needs proper guidance and nurturing in his childhood years. Father has failed to provide this guidance and parental support and nurturing.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

A parent is required to exert himself in maintaining contact and exercise firmness in maintaining a relationship even in difficult circumstances.

In this case, [] Father has evidenced a settled purpose of relinquishing parental claim to [Child]. He has refused and, particularly, *failed to perform parental duties*. [P]aternal Grandmother appears to be the driving force behind this litigation. That is understandable. However, she is not the parent.

Trial Court Opinion, 5/26/17, at 6-10 (citations and quotation marks omitted, emphasis in original); *see also* Trial Court Opinion, 7/11/17, at 2-3.

After a careful review of the record, we find that there is competent evidence in the record that supports the trial court's findings and credibility determinations. We, therefore, find no reason to disturb the trial court's conclusions or its discretion in terminating Father's parental rights to Child under section 2511(a)(1). *See In re B., N.M.*, 856 A.2d at 858 (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life, and that father's wish to not have his parental rights terminated was insufficient to protect those rights without affirmatively fostering a parental relationship with child); *In re L.M.*, 923 A.2d

505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights).[3]

In Father's second claim, he contends that the trial court erred and/or abused its discretion by failing to consider the totality of the circumstances, including Mother's uncooperative behavior, which impeded Father's relationship with Child. Father's Brief at 16, 20. Father argues that Mother sought to terminate his parental rights in response to his efforts to seek custodial rights of Child. *Id.* at 17-18. Father asserts that it would be unjust to allow Mother to remove Father from Child's life in light of his addiction problems and his loving relationship with Child. *Id.* at 18. Father further claims that the trial court never disposed of his custody action prior to terminating his parental rights. *Id.* at 18-20.

Regarding Father's second issue, the trial court stated as follows:

[The trial] court did consider the totality of the circumstances. The [trial] court considered that [P]aternal [G]randmother has been the primary person defending and pursuing this termination action. Father's testimony that he was interested in being a Father was not credible in light of his apparent desire to continue

---

[3] We note that Father has not raised any claim regarding section 2511(b) in either his appellate brief or in his Rule 1925(b) Concise Statement. Thus, the claim is waived on appeal. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not raised in an appellate brief and concise statement of errors complained of on appeal is waived). Nevertheless, even if the claim was not waived, we would conclude that there was no abuse of the trial court's discretion in terminating Father's parental rights to Child under section 2511(b). *See* Trial Court Opinion, 5/26/17, at 10; *see also In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

the status quo from Wisconsin. Mother was extremely open to visitation and in no way impeded Father's desire to contact [Child]. It was only when Father OD'd while having custody of [Child] (left alone with Father by [P]aternal [G]randmother, who had assured Mother that this would not happen) that Mother balked at [P]aternal [G]randmother's contact. Mother was extremely credible and very reasonable. She was extraordinarily sincere and reasonable in her desire to provide [Child] with whatever was in his best interests.

Trial Court Opinion, 7/11/17, at 4-5.

Based upon our review, the trial court considered the totality of the circumstances in reviewing the Petition to terminate Father's parental rights. *See, e.g.,* Trial Court Opinion, 5/26/17, at 6-10. Thus, we cannot grant Father relief on his second claim.

In his final claim, Father contends that the trial court erred in failing to appoint separate counsel to represent Child's legal interests and best interests until after the conclusion of the termination hearing. Father's Brief at 20. Father argues that under *In re L.B.M., supra*, Child should have been appointed legal counsel, separate from the guardian *ad litem*. *Id.* at 20, 22. Father asserts that the guardian *ad litem* did not investigate whether a conflict existed between Child's best interests and legal interests. *Id.* at 22. Father claims that the appointment of counsel following the completion of the proceeding was inadequate to determine whether there was a conflict. *Id.* at 22-23.

On February 23, 2017, the trial court appointed Attorney Deanna Pealer ("Attorney Pealer") to represent Child as his guardian *ad litem*. At the hearing

- 13 -

on March 23, 2017, Attorney Pealer represented Child, and actively questioned the witnesses. Subsequently, on March 28, 2017, in a plurality decision, our Supreme Court decided *In re L.B.M.*, which held that under 23 Pa.C.S.A. § 2313(a), courts must appoint counsel to represent the legal interest of a child in a contested involuntary termination proceeding. *In re L.B.M.*, 161 A.3d at 179-80; *see also id.* at 174 (noting that a child's best interests are distinct from his/her legal interests). Three members of the Court held that a child's legal interests cannot be represented by his or her guardian *ad litem* and requires separate counsel. *Id.* at 180-82. However, the majority of the Court concluded that counsel may serve both as the guardian *ad litem*, representing the child's best interests, and as the child's counsel, representing the child's legal interests, as long as there is no conflict between the child's legal and best interests. *Id.* at 183-93; *see also In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017) (stating that "separate representation would be required only if the child's best interest and legal interests were somehow in conflict.").

The trial court addressed Father's claims as follows:

> Following the hearing, the [trial] court became aware of [*In re L.B.M.*] The [trial] court appointed counsel[, Attorney Travis C. Petty ("Attorney Petty"),] to review the legal aspects of the case on behalf of [Child]. Th[e trial] court received an opinion from the appointed attorney indicating that the legalities of the adoption had been followed on behalf of [Child].

* * *

- 14 -

In the case at bar, [Child's] legal interests and best interests were not in conflict. Thus, Father's argument for separate representation fails on two fronts. Separate counsel and a separate [guardian *ad litem*] were in fact appointed for [Child], and there was no conflict between [Child's] best interests and legal interests.

Trial Court Opinion, 7/11/17, at 1-2, 4.

We agree with the trial court's reasoning. Here, the guardian *ad litem*, Attorney Pealer, was present at the termination hearing and effectively cross-examined the witnesses. *See In re D.L.B.*, 166 A.3d at 329 (declining to remand for appointment of separate counsel where the child's best interests and legal interests were unquestionably well represented by the guardian *ad litem* at the hearing, and such interests were never in conflict). The fact that the trial court subsequently appointed Attorney Petty to review the matter as legal counsel for Child only confirmed the trial court's conclusion that there was no conflict between the best interests and the legal interests of Child. As the trial court has determined that there is no conflict in the best interests and legal interests of Child, nor can we discern any such conflict, we find no abuse of discretion or error on the part of the trial court in not re-opening the record in this matter following the Supreme Court's issuance of its decision in *In re L.B.M.*

Order affirmed.

Judge Murray joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/21/2018